## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Richmond Division

NICOLAS REYES,

      Plaintiff,

v.                                 CASE NO.  3:18CV00611

HAROLD W. CLARKE, *et al.*,

      Defendants.

### ANSWER AND AFFIRMTIVE DEFENSES TO AMENDED COMPLAINT

COME NOW Defendants Clarke, Robinson, Kiser, Barksdale, Mathena, Gallihar, Duncan, Collins, Justin Kiser, Gilbert, Adams, Lambert, Lee, Huff, Trent, McDuffie, and Herrick, by counsel, and answer the complaint as follows:

1.      Defendants admit that the Plaintiff has been confined at Red Onion State Prison ("ROSP") since 2006.  Defendants lack sufficient information to admit or deny whether the Plaintiff qualifies as a "monolingual Spanish speaker," and, therefore, that allegation is denied. Defendants lack sufficient information to admit or deny whether a "vast majority" of staff and prisoners at ROSP "speak *only* English," and, therefore, that allegation is also denied. Defendants deny the remaining allegations of paragraph 1 and demand strict proof thereof.

2.      Defendants deny the allegations of paragraph 2 and demand strict proof thereof.

3.      Defendants deny the allegations of paragraph 3 and demand strict proof thereof.

4.      Defendants admit that one purpose of the Segregation Reduction Step-Down Program is to create a pathway to help transition offenders out of segregated housing and back into the general population.  The remaining allegations of paragraph 4 are denied.

5.      Defendants deny the allegations of paragraph 5 and demand strict proof thereof.

6.      Defendants deny the allegations of paragraph 6 and demand strict proof thereof.

7.       Defendants deny the allegations of paragraph 7 and demand strict proof thereof.

8.      Defendants deny the allegations of paragraph 8 and demand strict proof thereof.

9.      The statements in paragraph 9 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of paragraph 9 and demand strict proof thereof.

10.     Defendants deny the allegations of paragraph 10 and demand strict proof thereof.

11.     Defendants deny the allegations of paragraph 11 and demand strict proof thereof.

12.     The jurisdictional allegation in paragraph 12 does not require a response.  To the extent a response is required, Defendants admit that the Plaintiff has cited 42 U.S.C. § 1983 as a basis for this action.

13.     The jurisdictional allegations in paragraph 13 do not require a response.  To the extent a response is required, Defendants admit that this Court possesses general subject matter jurisdiction over claims that arise under the Constitution or a federal statute, but deny that the Court possesses subject matter over any claim in which a defendant is entitled to assert sovereign or Eleventh Amendment immunity.

14.      The legal statement in paragraph 14 does not require a response.  To the extent a response is required, Defendants admit that the Court possesses general authority to grant prospective injunctive and declaratory relief.  Defendants deny that the Court possesses the authority to grant retrospective injunctive or declaratory relief, and Defendants deny that any injunctive or declaratory relief is warranted under the circumstances of this case.

15.     Defendants deny that venue is proper in the Federal District Court for the Eastern District of Virginia.

16.     Defendants admit that Reyes has been in the custody of the Virginia Department of Corrections ("VDOC") since 2001, and that, as of the time of this response, he was housed at ROSP, which is located in Pound, Virginia.  Because Reyes has differing birthdates reflected in his criminal records, records from the Immigration and Naturalization Service ("INS"), and his VDOC records, Defendants lack sufficient information to admit or deny his precise age. Defendants note, however, that none of those documented birthdates would yield an age of forty-seven years.  Defendants admit that Reyes has stated that he is a native of El Salvador. However, because Reyes has an existing INS detainer from Honduras, Defendants cannot determine which jurisdiction is Reyes' home country and, therefore, cannot admit or deny whether he is a native of El Salvador.  Defendants lack sufficient information to admit or deny whether Reyes is a "monolingual Spanish speaker" or is "unable to read or write in any language," and, therefore, those allegations are denied.  Defendants deny any remaining allegations in paragraph 16.

17.     The allegations of paragraph 17 are admitted.

18.     Defendants deny that Defendant Robinson is responsible for overseeing VDOC's "compliance with federal laws."  The remaining allegations of paragraph 18 are admitted.

19.     Defendants deny that Defendant Warden Kiser has the "ultimate authority to approve" security-level classifications for all inmates at ROSP.  The remaining allegations of paragraph 19 are admitted.

20.     The allegations of paragraph 20 are admitted.

21.     The allegations of paragraph 21 are admitted.

22.     The allegations of paragraph 22 are admitted.

23.     The allegations of paragraph 23 are admitted.

24.     The allegations of paragraph 24 are admitted.

25.     Defendants deny that Defendant Justin Kiser is a current ROSP or VDOC employee.  The remaining allegations of paragraph 25 are admitted.

26.     The allegations of paragraph 26 are admitted.

27.     The allegations of paragraph 27 are admitted.

28.     The allegations of paragraph 28 are admitted.

29.     Defendants deny that Defendant Lee maintains his regular place of business at VDOC headquarters in Richmond, Virginia.  The remaining allegations of paragraph 29 are admitted.

30.     Defendants deny that Defendant Terrence Huff's current title is "Psychology Associate II."  Specifically, Defendant Huff is a "Psychology Associate Senior."  The remaining allegations of paragraph 30 are admitted.

31.     The allegations of paragraph 31 are admitted.

32.     The allegations of paragraph 32 are admitted.

33.     The allegations of paragraph 33 are admitted.

34.     Defendants deny the allegations of paragraph 34 and demand strict proof thereof.

35.     Defendants deny the allegations of paragraph 35 and demand strict proof thereof.

36.     Defendants deny the allegations of paragraph 36 and demand strict proof thereof.

37.     Defendants deny the allegations of paragraph 37 and demand strict proof thereof.

38.     Defendants deny the allegations of paragraph 38 and demand strict proof thereof.

39.     Defendants deny the allegations of paragraph 39 and demand strict proof thereof.

40.     Defendants admit that Justice Kennedy made the statements quoted in paragraph 40.  Defendants deny that the Plaintiff was housed in "solitary confinement" or that those comments are applicable to his conditions of confinement.

41.     Defendants deny the allegations of paragraph 41 and demand strict proof thereof.

42.     Defendants deny the allegations of paragraph 42 and demand strict proof thereof.

43.     Defendants lack sufficient information to admit or deny whether the stated professional organizations have "issued a position" regarding "prolonged solitary confinement." Defendants deny that the Plaintiff was housed in "solitary confinement" or that any positions taken by those organizations are otherwise applicable to his conditions of confinement.

44.     Defendants lack sufficient information to admit or deny whether the American Bar Association took the referenced position.  Defendants deny that the Plaintiff was housed in "solitary confinement" or that any position taken by American Bar Association is otherwise applicable to his conditions of confinement.

45.     Defendants lack sufficient information to admit or deny whether the "international human rights community" considers "long term solitary confinement" to constitute "torture." Defendants deny that the Plaintiff was housed in "long term solitary confinement" or that any position taken by the "international human rights community" is otherwise applicable to his conditions of confinement.

46.     Defendants lack sufficient information to admit or deny whether Mr. Mendez concluded that "prolonged solitary confinement" is "inconsistent with human rights norms." Defendants deny that the Plaintiff was housed in "prolonged solitary confinement" or that any position taken by Mr. Mendez is otherwise applicable to the Plaintiff's conditions of confinement.

47.     Defendants lack sufficient information to admit or deny whether the "U.N. Standard Minimum Rules for the Treatment of Prisoners" prohibit prolonged or indefinite solitary confinement.  Defendants deny that the Plaintiff was housed in "prolonged" or "indefinite" "solitary confinement" or that the U.N. Standard Minimum Rules are otherwise applicable to his conditions of confinement.

48.     Defendants deny the allegations of paragraph 48 and demand strict proof thereof.

49.     Defendants deny the allegations of paragraph 49 and demand strict proof thereof.

50.     Defendants deny that prisoners in VDOC custody are housed in "solitary confinement."  Any remaining allegations in paragraph 50 are also denied.

51.     Defendants admit that the quoted statement appears in the HBO documentary.

52.     Defendants admit that the quoted statement appears in the HBO documentary.

53.     Defendants admit that ROSP was constructed in 1998 and that it is a maximum-security prison.

54.     Defendants admit that Defendant Mathena made the quoted statement.

55.     The allegations in paragraph 55 are admitted.

56.     Defendants admit that there are recreation enclosures at ROSP that are intended to house one inmate at a time.  Defendants admit that the cells at ROSP are solid, but, to the extent the allegations in paragraph 56 imply that there are no openings or windows on those doors, those allegations are denied.  Any remaining allegations in paragraph 56 are also denied.

57.     Defendants deny that inmates at ROSP are housed in "solitary confinement." Defendants admit that inmates at ROSP can communicate with other inmates both verbally and through nonverbal means.  The remaining allegations of paragraph 57 are denied.

58.     Defendants admit the allegations of paragraph 58, with the exception of the word "purported," which implies that the goal of the Step-Down Program is something other than what is otherwise stated in this paragraph.

59.     Defendants admit that Defendant Mathena made the quoted statement.

60.     Defendants admit that Defendant Mathena made the quoted statement.

61.     Defendants admit that the journals to be completed as part of the "Challenge Series" are one component of the Step-Down Program, and that the goal of the "Challenge Series" is to help change the behavior and mindset of the prisoners participating in the program. Defendants admit that in-person instruction is included as part of the "Challenge Series." Any remaining allegations in paragraph 61 are denied.

62.     Defendants admit that the Plaintiff remained at privilege level "0" until June 2018. To the extent that this paragraph implies that the Plaintiff's failure to progress is attributable to these Defendants, that implication is denied. Any remaining allegations in paragraph 62 are denied.

63.     Defendants admit that, under current VDOC policies, inmates housed at privilege level "0" are provided with at least two hours of recreation, five days a week; at least three showers per week; at least two fifteen-minute phone calls per month; and at least one hour of non-contact visitation. Defendants admit that inmates at privilege level "0" are not allowed video visitation, do not have personal televisions inside their cells, are shackled when being moved around the prison, and have a limited commissary list. Defendants deny that inmates housed at privilege level "0" are denied access to materials in the law library or access to religious materials. Any remaining allegations in paragraph 63 are also denied.

64.     Defendants deny the allegations of paragraph 64 and demand strict proof thereof.

65.     Defendants admit that the Plaintiff progressed to privilege level SM-1 in June 2018, and that this was approximately seven years after the Step-Down Program started being implemented.

66.     Defendants admit that some of the baseline privileges for SM-1 offenders are set forth in paragraph 66.  Defendants incorporate by reference their response to paragraph 63, with respect to the baseline privileges for SM-0 offenders.  Any remaining allegations in paragraph 66 are denied.

67.     The allegations of paragraph 67 are admitted.

68.     Defendants admit that the Plaintiff was involved in an altercation with another inmate on February 2, 2006.  Defendants admit that, according to his medical records, the Plaintiff had a nosebleed, some facial contusions, and swelling around his eye after that altercation.  Defendants note that the Plaintiff's cellmate received twenty-four stitches following that altercation, and that the cellmate's injuries appeared to have been caused by a weapon.  Defendants further note that, during that altercation, the Plaintiff refused several orders to stop assaulting his cellmate.  Accordingly, the remaining allegations of paragraph 68 are denied.

69.     Defendants deny the allegations of paragraph 69.

70.     Because Defendants cannot verify what the Plaintiff subjectively believes, any allegations describing his belief or state of mind are denied.  Defendants further note that the disciplinary documents associated with the February 2006 incident specifically reference and name the interpreter who was used to communicate with the Plaintiff, and that the Plaintiff, through that interpreter, elected to accept a penalty offer to the charged offense of aggravated assault.  Accordingly, the remaining allegations of paragraph 70 are denied.

8

71.     As noted in response to paragraph 70, the Plaintiff, acting through an interpreter, elected to accept a penalty offer for the charged offense of aggravated assault.  Because the Plaintiff accepted the penalty offer, thereby conceding his guilt, there were no further disciplinary proceedings associated with that disciplinary charge.  Accordingly, Defendants admit that there was no disciplinary hearing, involving the presentation of evidence, for the disciplinary charge.  The remaining allegations of paragraph 71 are denied.

72.     Defendants admit that the Plaintiff was returned to ROSP in 2006, and that he is still an inmate at that institution.  The remaining allegations of paragraph 72 are denied.

73.     Defendants deny that the Step-Down Program applies to inmates "in long-term isolation."  Defendants admit that Plaintiff was placed in the "SM" internal pathway, and that the quoted statement from the policy describes inmates within the "SM" pathway.  Any remaining allegations in paragraph 73 are denied.

74.     The allegations of paragraph 74 are denied.

75.     Defendants deny the allegations of paragraph 75 and demand strict proof thereof.

76.     Defendants admit that inmates participating in the Step-Down Program earn progressively more privileges as they move through the program, and that they receive regular reviews of their progress and security level.  Any remaining allegations in paragraph 76 are denied.

77.     Defendants admit that any inmate assigned to security level "S" receives a formal ICA hearing once every 90 days.

78.     Defendants admit that the Building Management Committee makes privilege level recommendations to the ICA, and that the Committee meets at least monthly.

9

79.     Defendants admit that level "S" offenders receive other periodic reviews, but deny that these reviews are considered "interim ICA reviews."  Specifically, in addition to the 90-day ICA hearings and the monthly reviews by the Building Management Committee, level "S" offenders receive bi-annual reviews from the External Review Team, quarterly informal reviews by the Dual Treatment Team, and 30-day formal reviews by the Multi-Disciplinary Team.  Because Defendants are not sure which process the Plaintiff is attempting to describe in paragraph 79, Defendants lack sufficient information to admit or deny whether that process is accurately set forth.

80.     Defendants admit that the Dual Treatment Team reviews classification decisions and mental health assessments.  Defendants admit  that the External Review team reviews level "S" offenders at least twice a year, to determine whether they have been appropriately classified, are assigned to the correct privilege level, and have been appropriately considered for advancement within the Step-Down Program.  Any remaining allegations in paragraph 80 are denied.

81.     Defendants deny the allegations of paragraph 81 and demand strict proof thereof.

82.     Defendants deny the allegations of paragraph 82 and demand strict proof thereof.

83.     Defendants deny the allegations of paragraph 83 and demand strict proof thereof.

84.     Defendants admit that the Operating Procedure contains the quoted statement. Any remaining allegations in paragraph 84 are denied.

85.     Defendants admit that the ICA findings are not translated into written Spanish. The remaining allegations of paragraph 85 are denied.

86.     Defendants deny the allegations of paragraph 86 and demand strict proof thereof.

87.     Defendants deny the allegations of paragraph 87 and demand strict proof thereof.

88.     Defendants deny the allegations of paragraph 88 and demand strict proof thereof.

89.     Defendants deny the allegations of paragraph 89 and demand strict proof thereof.

90.     Defendants admit that inmates do not attend reviews by the external review team and cannot directly appeal any findings of the external review team.  The remaining allegations of paragraph 90 are denied.

91.     Defendants admit that inmates do not attend reviews by the dual treatment team and cannot directly appeal any findings of the dual treatment team.  The remaining allegations of paragraph 91 are denied.

92.     Defendants admit that the Plaintiff was moved into a progressive housing unit in May of 2009, and that he remained in that housing unit for approximately four months.  The remaining allegations of paragraph 92 are denied.

93.     Defendants admit that VDOC presently operates a housing unit for prisoners who are resistant to out-of-cell or general population activities, and that the Plaintiff has not been placed in that unit.  The remaining allegations of paragraph 93 are denied.

94.     Defendants admit that the Plaintiff was offered an opportunity to move into progressive housing in October 2010, and that the Plaintiff declined that opportunity.  The remaining allegations of paragraph 94 are denied.

95.     Defendants admit that the Plaintiff was offered an opportunity to move into progressive housing in July 2011, and that the Plaintiff declined that opportunity.  The remaining allegations of paragraph 95 are denied.

96.     The allegations of paragraph 96 are denied.

97.     The allegations of paragraph 97 are denied.

98.     Defendants admit that the Plaintiff remained in segregation in 2011, and that his ICA reports contain some of the referenced statements.  The remaining allegations of paragraph 98 are denied.

99.     Defendants admit that the Plaintiff was assigned to the "SM" internal pathway in December 2012.  The remaining allegations of paragraph 99 are denied.

100.    The allegations of paragraph 100 are denied.

101.    Defendants admit that the Plaintiff's ICA reports contain the referenced statements.  The remaining allegations of paragraph 101 are denied.

102.    Defendants admit that the Plaintiff accepted a Challenge series workbook in February 2018, and that he was advanced to privilege level SM-1 by June 2018.  The remaining allegations of paragraph 102 are denied.

103.    The allegations of paragraph 103 are denied.

104.    The allegations of paragraph 104 are denied.

105.    The allegations of paragraph 105 are denied.

106.    The allegations of paragraph 106 are denied.

107.    Defendants admit that the Plaintiff's cell has a bed, a table, a toilet, sink, and lights that do not completely turn off at night.  The remaining allegations of paragraph 107 are denied.

108.    The allegations of paragraph 108 are denied.

109.    The allegations of paragraph 109 are denied.

110.    The allegations of paragraph 110 are denied.

111.    The allegations of paragraph 111 are denied.

112.    Defendants admit that the Plaintiff has lost weight during his confinement within VDOC.  The remaining allegations of paragraph 112 are denied.

113.    Defendants admit that the Plaintiff has lost weight during his confinement within VDOC.  The remaining allegations of paragraph 113 are denied.

114.    Defendants admit that level "S" inmates previously received at least one hour of recreation, five days a week, and that this policy has recently been altered to allow for at least two hours of recreation, five days a week.  The remaining allegations of paragraph 114 are denied.

115.    Defendants admit that the Plaintiff is not free to leave his cell without a security escort.  The remaining allegations of paragraph 115 are denied.

116.    Defendants admit that level "S" inmates are placed in enclosures by themselves, but adjacent to enclosures containing other inmates.  The remaining allegations of paragraph 116 are denied.

117.    Defendants admit that the Plaintiff is required to submit to a strip search before he leaves his cell for recreation, and that he is shackled when he is moving from one area to another. The remaining allegations of paragraph 117 are denied.

118.    The allegations of paragraph 118 are denied.

119.    Defendants admit that there is a window in the Plaintiff's cell.  The remaining allegations of paragraph 119 are denied.

120.    Defendants admit that, by policy, level "S" offenders are allowed to shower at least three times per week.  The remaining allegations of paragraph 120 are denied.

121.    Defendants lack sufficient information to admit or deny the allegations of paragraph 121, and, therefore, those allegations are denied.

122.    Defendants lack sufficient information to admit or deny whether the Plaintiff has attempted to correspond with his family, and, therefore, those allegations are denied.  Any remaining allegations of paragraph 122 are also denied.

123.    Defendants admit that, by policy, level "S" inmates at privilege level "0" who wish to conduct personal phone calls are allowed two fifteen-minute phone calls per month.  The remaining allegations of paragraph 123 are denied.

124.    Defendants admit that the Plaintiff had a legal phone call in March 2018.  The remaining allegations of paragraph 124 are denied.

125.    The allegations of paragraph 125 are denied.

126.    The allegations of paragraph 126 are denied.

127.    Defendants admit that the Plaintiff could earn sentence-reducing credit under the Good Conduct Allowance ("GCA") system.  Because the Plaintiff was convicted of first-degree murder, however, Defendants deny that he would otherwise automatically be eligible to earn 30 days of sentence-reducing credit for every 30 days served.  Defendants deny that VDOC policy is the sole reason that the Plaintiff does not earn "the maximum good conduct time allowed."  Any remaining allegations of paragraph 127 are also denied.

128.    Defendants admit that the Plaintiff has been participating in the Step-Down Program.  The remaining allegations of paragraph 128 are denied.

129.    Because Defendants lack sufficient information to opine on the Plaintiff's subjective state of mind, the allegations of paragraph 129 are denied.

130.    Defendants admit that the Plaintiff receives his meals in the same cell where he sleeps and uses the toilet.  The remaining allegations of paragraph 130 are denied.

131.    Defendants lack sufficient information to admit or deny what the Plaintiff does inside his cell, and, therefore, the allegations of paragraph 131 are denied.

132.    The allegations of paragraph 132 are denied.

133.    Defendants admit that the Plaintiff was assigned to mental health code MH-0 when he was brought into VDOC custody in April 2001.

134.    Defendants admit that the Plaintiff was placed into segregated confinement at ROSP in June 2001.  Defendants lack sufficient information to admit or deny the remaining allegations of paragraph 134 and, therefore, those allegations are denied.

135.    Defendants admit that the Plaintiff was placed into a general population housing unit at Wallens Ridge State Prison in 2003.  Defendants lack sufficient information to admit or deny the remaining allegations of paragraph 135 and, therefore, those allegations are denied.

136.    Defendants admit that the Plaintiff was transferred to ROSP in 2006 and placed in segregated housing.  The remaining allegations of paragraph 136 are denied.

137.    Defendants admit that the Plaintiff was evaluated by Defendant Huff, a qualified mental health professional ("QMHP") in November 2007.  The written notes from that evaluation speak for themselves.  The remaining allegations of paragraph 137 are denied.

138.    Defendants admit that, on November 28, 2007, Defendant Huff noted that the Plaintiff had the "affect" of an individual who might be "severely depressed," and, therefore, Defendant Huff immediately admitted the Plaintiff to the medical clinic under mental health observations.  The Plaintiff was taken to a medical room, and, about an hour later, a senior QMHP joined Defendant Huff to help evaluate the Plaintiff.  At least in part because the Plaintiff denied suicidal or homicidal ideation, the decision was made to monitor the Plaintiff's condition in the medical unit rather than immediately transporting him for inpatient care.  Following a 24

hour period of observation, the Plaintiff's affect had noticeably improved, and he was eating and

drinking.  It was therefore determined that admission to an acute care unit was not warranted at

that time, and the Plaintiff was ultimately discharged from medical observation.  Any remaining

allegations in paragraph 138 are denied.

139.    The allegations of paragraph 139 are denied.

140.    Defendants admit that, on October 20, 2009, a QMHP visited the Plaintiff to

discuss why he had refused to go to the chow hall with the rest of his progressive housing unit.

Based on her observations and conversation with the Plaintiff, the QMHP elected to refer to the

Plaintiff to a psychiatrist.  When the Plaintiff was assessed by the psychiatrist, he denied

depression, suicidal or homicidal ideation, and stated that he was not interested in psychotropic

medication.  The psychiatrist also noted that there was no apparent need for medication at that

time.  The psychiatrist therefore determined that no additional intervention was warranted, and

he noted that he would follow up with the Plaintiff within thirty days.  When the psychiatrist

tried to conduct a follow up appointment with the Plaintiff on two subsequent occasions,

however, the Plaintiff refused to be seen.  Any remaining allegations in paragraph 140 are

denied.

141.    Defendants were unable to locate documentation in the Plaintiff's mental health

file referencing the allegations of paragraph 141 and, therefore, lack sufficient information to

admit or deny whether those allegations accurately represent the findings of the psychiatrist or

his comments regarding the evaluation.  Any remaining allegations in paragraph 141 are also

denied.

142.    Defendants admit that the quoted statement appears in a mental health services

progress note from July 7, 2015, but also note that the same progress note indicates that the

Plaintiff is able to communicate in broken English.  Defendants further note that several mental health services progress notes reference the presence of a translator, and others contain quoted sentences in clear English—such as the note from October 9, 2015, by the same QMHP, which notes that the Plaintiff stated, "I do not need an office visit."  Any remaining allegations in paragraph 142 are denied.

143.    Defendants admit that, on May 9, 2016, the Plaintiff was assessed by QMHP Trent with the assistance of an interpreter.  The assessment was requested by a supervisor in the Plaintiff's housing unit.  Defendants deny that the Plaintiff performed "extremely poorly" on the mini mental status examination.  Although his grooming and hygiene were poor, and his speech was rapid, the Plaintiff's eye contact and posture were good, his mood was euthymic, no abnormal thought content was noted, he had adequate insight, his behavior and activity were within normal limits, he had a normal affect, no perceptual disturbances, no reported hallucinations, adequate insight, speech volume within normal limits, displayed a linear thought process, was alert and oriented to person and situation, had intact recent and remote memory, had an average assessed estimated intelligence, displayed good judgment, and had good impulse control.  Defendants admit that the QMHP attributed some difficulty with scoring the status examination to a language barrier, noting that the interpreter was having difficulty understanding the Plaintiff's precise dialect.  Defendants admit that the Plaintiff continued to be designated as mental health code "0."  Any remaining allegations of paragraph 143 are denied.

144.    Defendants admit that, on November 15, 2016, Defendant Huff noted that the Plaintiff did not meet any of the criteria for being designated as having a serious mental illness ("SMI"), a designation that was given to offenders "with a mental health code of 2 or greater," who had a "qualifying diagnosis" (such a schizophrenia, bipolar disorder, or major depressive

disorder), and who present with "severe functional impairment as a result of the mental illness." Although the notes from 11/15/16 do not indicate whether Defendant Huff met with the Plaintiff at that specific time, Defendant Huff had recorded at least 27 prior contacts with the Plaintiff at ROSP, corresponding to his role as a QMHP.  Any remaining allegations in paragraph 144 are denied.

145.    Defendants admit that, on October 5, 2017, Defendant Trent met with the Plaintiff, along with an interpreter, to assess whether the Plaintiff might meet the criterial for being designated as seriously mentally ill.  As a result of that assessment, Defendant Trent noted that he would schedule the Plaintiff to meet with a psychiatrist, and he would consider whether an SMI designation might be "clinically appropriate."  Defendant Trent noted that he could not determine whether the Plaintiff displayed psychosis because the interpreter again had difficulty understanding the Plaintiff's dialect.  Several days later, Defendant Trent updated the Plaintiff's mental health classification code to "MH-2S" and indicated that an "SMI" designation would be appropriate.  Any remaining allegations in paragraph 145 are denied.

146.    Defendants lack sufficient information to admit or deny the allegations of paragraph 146 and, therefore, those allegations are denied.

147.    Defendants admit that, on January 22, 2018, Defendant Huff assessed the Plaintiff to determine whether he met the criteria for being designated as an "SMI" offender.  The notes from that examination speak for themselves, but include notations that the Plaintiff was oriented to person, place, time, and situation, and he presented with normal mood, behavior, activity, affect, speech, thought process, and memory.  Any remaining allegations in paragraph 147 are denied.

148.     Defendants admit that Defendant Huff noted that the Plaintiff had evident memory problems, based on the fact that he did not know his state ID number or his date of birth.  Defendant Huff recommended that the Plaintiff be evaluated by a psychiatrist to determine whether anti-depressants might be warranted.  Any remaining allegations in paragraph 148 are denied.

149.     Defendants admit that Defendant Trent evaluated the Plaintiff on January 23, 2018, with the assistance of an interpreter.  Defendant Trent noted some symptoms of psychosis, but that his thoughts were organized and complete.  Defendant Trent agreed that referral to a psychiatrist would be appropriate.  Any remaining allegations in paragraph 149 are denied.

150.     Defendants admit that Dr. McDuffie assessed the Plaintiff, with the assistance of an interpreter, on January 25, 2018.  Dr. McDuffie noted that the Plaintiff had major depression, severe recurrent, and recommended that the Plaintiff be placed on Prozac. Dr. McDuffie noted that he would follow up with the Plaintiff in approximately 30 days.  Any remaining allegations of paragraph 150 are denied.

151.     Defendants admit that Defendant Huff reassessed the Plaintiff's qualification as an "SMI" offender on the following day (January 26, 2018), and noted that, although the Plaintiff had been diagnosed with a depressive disorder, he did not meet the criteria for functional impairment because he had been placed on medication to treat his depression.  Defendant Huff also updated the Plaintiff's mental health classification code from "MH-2S" to "MH-2," meaning that the Plaintiff was mildly impaired but receiving medication for his depression.  Any remaining allegations in paragraph 151 are denied.

152.     The allegations of paragraph 152 are denied.

153.     The allegations of paragraph 153 are denied.

154.    The allegations of paragraph 154 are denied.

155.    The allegations of paragraph 155 are denied.

156.    Defendants admit that some inmates in the VDOC general population, at certain low-security-level facilities, are housed in a dormitory-style setting, and that inmates in the general population have different opportunities for communication and interaction than level "S" inmates.  However, VDOC does not have "open-barred" cells in any of its housing units. Accordingly, the remaining allegations of paragraph 156 are denied.

157.    Defendants admit that inmates in the general population have different opportunities for communication and interaction than level "S" inmates, and that general population inmates tend to have congregate recreation and meals.  Any remaining allegations in paragraph 157 are denied.

158.    Defendants admit that inmates in the general population are given access to outdoor recreation, and that—depending upon the institution—they may have access to recreation equipment.  Defendants admit that inmates in the general population may interact within their housing unit, and that they may have access to cards for playing games.  Any remaining allegations in paragraph 158 are denied.

159.    Defendants admit that inmates in the general population are allowed to use the phone, but deny that there are "no limitations," of any kind, on that privilege.  Defendants admit that inmates in the general population may typically have contact visitation with family members and attorneys.  Any remaining allegations in paragraph 159 are denied.

160.    Defendants admit that some inmates in the general population are permitted to move about the institution, unrestrained.  Defendants admit that inmates in the general population are generally not subjected to a "body cavity search" when they are brought out of

their cell, but that this is situation-dependent.  Any remaining allegations in paragraph 160 are denied.

161.    Defendants admit that many inmates in the general population have access to congregate programming, and that many inmates in the general population are allowed to physically go to the law library.  Because VDOC does not have "chapels" at its facilities, the allegations about religious programming are denied.  Any remaining allegations in paragraph 161 are also denied.

162.    Defendants admit that many inmates in the general population have access to vocational training and employment opportunities.  Defendants admit that inmates in the general population may be able to earn sentence-reducing credit.  Any remaining allegations in paragraph 162 are denied.

163.    Defendants admit that some parole-eligible inmates may earn sentence-reducing credit under the GCA system, but deny that all such inmates are automatically eligible to earn 30 days of sentence-reducing credit for every 30 days served.

164.    The allegations of paragraph 164 are admitted.

165.    Defendants admit that Director Clarke generally sets VDOC policies, but deny that Director Clarke signs all of these policies or actively supervises compliance with all VDOC policies.  Any remaining allegations of paragraph 165 are denied.

166.    Defendants deny the allegations of paragraph 166 and demand strict proof thereof.

167.    Defendants deny the allegations of paragraph 167 and demand strict proof thereof.

168.    Defendants deny the allegations of paragraph 168 and demand strict proof thereof.

169.    Defendants deny the allegations of paragraph 169 and demand strict proof thereof.

170.     Defendants admit that Defendant Robinson, as Chief of Corrections Operations, maintains general oversight over VDOC policies pertaining to offenders in special housing.  Any remaining allegations of paragraph 170 are denied.

171.     Defendants deny the allegations of paragraph 171 and demand strict proof thereof.

172.     Defendants deny the allegations of paragraph 172 and demand strict proof thereof.

173.     Defendants admit that Warden Kiser, generally, is responsible for the care and custody of inmates currently housed at ROSP.  The remaining allegations of paragraph 173 are denied.

174.     Defendants admit that Warden Kiser, generally, is responsible for managing ROSP employees.  The remaining allegations of paragraph 174 are denied.

175.     Defendants lack sufficient information to admit or deny whether another inmate may have submitted an informal complaint "on behalf" of the Plaintiff, and, therefore, that allegation is denied.  Any remaining allegations of paragraph 175 are also denied.

176.     Defendants lack sufficient information to admit or deny whether a "third party" may have submitted an informal complaint on behalf of the Plaintiff, and, therefore, that allegation is denied.  Any remaining allegations of paragraph 176 are also denied.

177.     Defendants deny the allegations of paragraph 177 and demand strict proof thereof.

178.     Defendants admit that Defendant Barksdale, as the former warden of ROSP, was generally responsible for the care and custody of inmates housed at ROSP at that time.  The remaining allegations of paragraph 178 are denied.

179.     Defendants admit that Defendant Barksdale, as the former warden of ROSP, was generally responsible for managing ROSP employees.  The remaining allegations of paragraph 179 are denied.

180.    Defendants admit that Defendant Mathena, as the former warden of ROSP, was generally responsible for the care and custody of inmates housed at ROSP at that time.  The remaining allegations of paragraph 180 are denied.

181.    Defendants admit that Defendant Mathena, as the former warden of ROSP, was generally responsible for managing ROSP employees.  The remaining allegations of paragraph 181 are denied.

182.    Defendants admit that Defendant Mathena serves as chairman of the external review team, which performs biannual reviews of level "S" offenders.  The remaining allegations of paragraph 182 are denied.

183.    Defendants admit that Defendant Gallihar, as chief of housing and programs, serves on the dual treatment team.  The remaining allegations of paragraph 183 are denied.

184.    Defendants admit that Defendant Gallihar also serves on the building management committee, which makes recommendations regarding privilege levels and assigned security levels.  The remaining allegations of paragraph 184 are denied.

185.    Defendants admit that Defendants Duncan and Collins administratively reviewed some of the Plaintiff's ICA determinations. The remaining allegations of paragraph 185 are denied.

186.    Defendants admit that Defendant Duncan is the former unit manager of the "C" building at ROSP, and that Defendant Collins is the current unit manager of the "C" building at ROSP.  Defendants admit that unit managers are generally responsible for oversight of the security officers assigned to a particular building.  The remaining allegations of paragraph 186 are denied.

187.     Defendants admit that Defendant Justin Kiser, Gilbert, Adams, and Lambert were involved in some of the Plaintiff's ICA reviews.  The remaining allegations of paragraph 187 are denied.

188.     The allegations of paragraph 188 are denied.

189.     Defendants admit that Defendant Huff and Trent are QMHPs at ROSP, and that they may serve on the building management committee and dual treatment team.  Defendants admit that Defendant McDuffie, a psychiatrist, has assessed the Plaintiff.  The remaining allegations of paragraph 189 are denied.

190.     Defendants admit that Defendant Herrick is the Director of Health Services for VDOC, and that, in that role, he is generally responsible for ensuring that offenders have adequate access to health services.  The remaining allegations of paragraph 190 are denied.

**Count I:  Violation of the Eighth Amendment to the U.S. Constitution**

191.     Defendants adopt and incorporate their responses to the preceding paragraphs as if fully set forth herein.

192.     Defendants deny the allegations of paragraph 192 and demand strict proof thereof.

193.     Defendants deny the allegations of paragraph 193 and demand strict proof thereof.

194.     Defendants deny the allegations of paragraph 194 and demand strict proof thereof.

195.     Defendants deny the allegations of paragraph 195 and demand strict proof thereof.

196.     Defendants deny the allegations of paragraph 196 and demand strict proof thereof.

197.     Defendants deny the allegations of paragraph 197 and demand strict proof thereof.

198.     Defendants deny the allegations of paragraph 198 and demand strict proof thereof.

**Count II:  Violation of the Due Process Clause of the Fourteenth Amendment**

199.    Defendants adopt and incorporate their responses to the preceding paragraphs as if fully set forth herein.

200.    Defendants deny the allegations of paragraph 200 and demand strict proof thereof.

201.    Defendants deny the allegations of paragraph 201 and demand strict proof thereof.

202.    Defendants deny the allegations of paragraph 202 and demand strict proof thereof.

203.    Defendants deny the allegations of paragraph 203 and demand strict proof thereof.

204.    Defendants deny the allegations of paragraph 204 and demand strict proof thereof.

205.    Defendants deny the allegations of paragraph 205 and demand strict proof thereof.

206.    Defendants deny the allegations of paragraph 206 and demand strict proof thereof.

**Count III:  Violation of the Americans with Disabilities Act**

207.    Defendants adopt and incorporate their responses to the preceding paragraphs as if fully set forth herein.

208.    Defendants deny the allegations of paragraph 208 and demand strict proof thereof.

209.    Defendants deny the allegations of paragraph 209 and demand strict proof thereof.

210.    Defendants deny the allegations of paragraph 210 and demand strict proof thereof.

211.    The allegations in paragraph 211 state a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny the allegations of paragraph 211 and demand strict proof thereof.

212.    The allegations in paragraph 212 state a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny the allegations of paragraph 212 and demand strict proof thereof.

213.    Defendants deny the allegations of paragraph 213 and demand strict proof thereof.

214.    Defendants deny the allegations of paragraph 214 and demand strict proof thereof.

215.    Defendants deny the allegations of paragraph 215 and demand strict proof thereof.

**Count IV:  Violation of the Rehabilitation Act of 1973**

216.    Defendants adopt and incorporate their responses to the preceding paragraphs as if fully set forth herein.

217.    Defendants deny the allegations of paragraph 217 and demand strict proof thereof.

218.    Defendants deny the allegations of paragraph 218 and demand strict proof thereof.

219.    Defendants deny the allegations of paragraph 219 and demand strict proof thereof.

220.    Defendants deny the allegations of paragraph 220 and demand strict proof thereof.

221.    The allegations in paragraph 221 state a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny the allegations of paragraph 221 and demand strict proof thereof.

222.    Defendants deny the allegations of paragraph 222 and demand strict proof thereof.

223.    Defendants deny the allegations of paragraph 223 and demand strict proof thereof.

224.    Defendants deny the allegations of paragraph 224 and demand strict proof thereof.

**Count V:  Violation of the Equal Protection Clause of the Fourteenth Amendment**

225.    Defendants adopt and incorporate their responses to the preceding paragraphs as if fully set forth herein.

226.    Defendants deny the allegations of paragraph 226 and demand strict proof thereof.

227.    Defendants deny the allegations of paragraph 227 and demand strict proof thereof.

228.    Defendants deny the allegations of paragraph 228 and demand strict proof thereof.

229.    Defendants deny the allegations of paragraph 229 and demand strict proof thereof.

230.    Defendants deny the allegations of paragraph 230 and demand strict proof thereof.

231.   Defendants deny the allegations of paragraph 231 and demand strict proof thereof.

232.   Defendants deny the allegations of paragraph 232 and demand strict proof thereof.

### Count VI:  Violation of Title VI of the Civil Rights Act of 1964

233.   Defendants adopt and incorporate their responses to the preceding paragraphs as if fully set forth herein.

234.   The allegations in paragraph 234 state a legal conclusion to which no response is required.  To the extent that a response is required, Defendants deny the allegations of paragraph 234 and demand strict proof thereof.

235.   Defendants deny the allegations of paragraph 235 and demand strict proof thereof.

236.   Defendants deny the allegations of paragraph 236 and demand strict proof thereof.

237.   Defendants deny the allegations of paragraph 237 and demand strict proof thereof.

238.   Defendants deny the allegations of paragraph 238 and demand strict proof thereof.

239.   Defendants deny the allegations of paragraph 239 and demand strict proof thereof.

240.   Defendants deny the allegations of paragraph 240 and demand strict proof thereof.

241.   Defendants deny the allegations of paragraph 241 and demand strict proof thereof.

### PUNITIVE DAMAGES

242.   Defendants adopt and incorporate their responses to the preceding paragraphs as if fully set forth herein.

243.   Defendants deny that the Plaintiff is entitled to recover punitive damages, and specifically deny that the Plaintiff is entitled to recover punitive damages from any official-capacity Defendant.

## PRAYER FOR RELIEF

In response to the Prayer for Relief, Defendants state as follows:

1.     Defendants deny that they have "isolated" the Plaintiff in "solitary confinement," in violation of the Eighth and Fourteenth Amendments.

2.     Defendants deny that they have failed to treat the Plaintiff's "mental illness," in violation of the Eighth Amendment.

3.     Defendants deny that they have failed to accommodate the Plaintiff's "mental illness," in violation of the Americans with Disabilities Act and the Rehabilitation Act, and further deny that he has mental disability that falls within the scope of either statute.

4.     Defendants deny that the Plaintiff is entitled to permanent injunctive relief.

5.     Defendants deny that the Plaintiff is entitled to compensatory damages.

6.     Defendants deny that the Plaintiff is entitled to compensatory damages from any official-capacity Defendant.

7.     Defendants deny that the Plaintiff is entitled to nominal damages.

8.     Defendants deny that the Plaintiff is entitled to punitive damages.

9.     Defendants deny that the Plaintiff is entitled to an award of costs and attorney's fees.

10.     Defendants deny that the Plaintiff is entitled to any additional equitable or other relief from this Court.

## AFFIRMATIVE DEFENSES

Defendants state the following affirmative defenses to the Complaint.  Defendants will rely on any and all other properly available defenses to the Complaint which may arise from Plaintiff's prosecution of this action and reserve their right to amend these defenses if at any time they should be so advised.

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Defendants deny that venue is proper in the Federal District Court for the Eastern District of Virginia.

### THIRD DEFENSE

Defendants deny that the claims in the Complaint are cognizable under the Eighth Amendment, Fourteenth Amendment, the Americans with Disabilities Act, the Rehabilitation Act, Title VI of the Civil Rights Act, or any section or clause of the United States Constitution or any other federal law or regulation.

### FOURTH DEFENSE

Defendants deny that jurisdiction on the Complaint is conferred upon the Court by 42 U.S.C. § 1983, the previously cited amendments to the United States Constitution, or any other federal law or regulation.  Further, Defendants specifically deny that the Court has jurisdiction over any claim which might be construed to state a claim under state law.

### FIFTH DEFENSE

Defendants deny that Plaintiff has suffered any injury or damage as a result of action or omission upon the part of any of these Defendants.

## SIXTH DEFENSE

Defendants allege and aver that, to the extent that the Plaintiff has suffered any injuries or damages, such injuries or damages were caused by others not under the control of these Defendants, and for whose conduct they are in no way responsible.

## SEVENTH DEFENSE

Defendants deny that the Plaintiff has suffered the injuries and damages alleged and call for strict proof thereof.

## EIGHTH DEFENSE

Defendants are immune from suit based upon the Eleventh Amendment and upon the discharge of their official duties.

## NINTH DEFENSE

Defendants deny that they are indebted to or liable to Plaintiff in any sum whatsoever.

## TENTH DEFENSE

Defendants are entitled to good faith, Eleventh Amendment, sovereign, and/or qualified immunity.

## ELEVENTH DEFENSE

To the extent that Plaintiff has failed to allege any direct involvement on the part of any of the Defendants in any of the acts or omissions complained of, such claims must fail because *respondeat superior* is not available in an action under 42 U.S.C. § 1983.

## TWELFTH DEFENSE

To the extent that this claim alleges negligence on the part of the Defendants, the claim is barred in this Court by the Eleventh Amendment.

THIRTEENTH DEFENSE

To the extent Plaintiff has not exhausted his administrative remedies, this action is barred, in whole or in part, under 42 U.S.C. § 1997e(a).

FOURTEENTH DEFENSE

To the extent that Plaintiff can make no showing of any physical injury accompanying or preceding any alleged emotional or mental injuries, his recovery of damages for any emotional injuries is barred under 42 U.S.C. § 1997e(e).

FIFTEENTH DEFENSE

This matter is barred, in whole or in part, by the two-year personal injury statute of limitations borrowed from Virginia Code § 8.01-243(A), which applies to claims under 42 U.S.C. § 1983 and Title VI of the Civil Rights Act.

SIXTEENTH DEFENSE

This matter is barred, in whole or in part, by the one-year statute of limitations borrowed from Virginia Code § 51.5-46(B), which applies to the Plaintiff's claims under the Americans with Disabilities Act and the Rehabilitation Act.

SEVENTEETH DEFENSE

Defendants are entitled to sovereign and Eleventh Amendment immunity with respect to the Plaintiff's claims under Title II of the Americans with Disabilities Act.

EIGHTEENTH DEFENSE

Defendants are immune, in their official capacities, from any request for punitive or compensatory damages.

<u>NINETEENTH DEFENSE</u>

Defendants are immune, in their official capacities, from any request for retrospective

injunctive or declaratory relief.

<u>TWENTIETH DEFENSE</u>

The Court's authority to award injunctive relief is constrained by the express terms of the

Prisoner Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626(a)(1)(A).


Respectfully submitted,

HAROLD CLARKE, A. DAVID ROBINSON,
JEFFREY KISER, RANDALL MATHENA, EARL
BARKSDALE, ARVIL GALLIHAR, AMEE
DUNCAN, LARRY COLLINS, JUSTIN KISER,
CHRISTOPHER GILBERT, GARRY ADAMS,
JAMES LAMBERT, WILLIAM LEE, TERRANCE
HUFF, D. TRENT, EVERETT ELLISON
MCDUFFIE, and STEVEN HERRICK


By: _____/s/_____
Margaret Hoehl O'Shea, AAG, VSB #66611
Attorney for named Defendants
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
(804) 225-2206
(804) 786-4239 (Fax)
Email:  moshea@oag.state.va.us

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of October, 2018, I electronically filed the foregoing

Answer and Affirmative Defenses with the Clerk of the Court using the CM/ECF system, which

will send a notification of such filing (NEF) to the following:

Claire Gastanaga (VSB #14067)
Vishal Agraharkar (*pro hac vice*)
Eden B. Heilman (*pro hac vice*)
American Civil Liberties Union of Va.
701 E. Franklin Street, Ste. 1412
Richmond, VA 23219
(804) 532-2151
claire@acluva.org
vagraharkar@acluva.org
eheilman@acluva.org

Maggie E. Filler (*pro hac vice*)
Roderick & Solange MacArthur Justice Ctr.
745 Atlantic Avenue, 8th Floor
Boston, MA 02111
(857) 284-1455
maggie.filler@macarthurjustice.org

Locke E. Bowman (*pro hac vice*)
Roderick & Solange MacArthur Justice Ctr.
375 East Chicago Avenue
Chicago, IL 60611
(312) 503-0844
l-bowman@law.northwestern.edu
*Counsel for Plaintiff*

And I hereby certify that I have mailed the document by United States Postal Service to the

following non-filing user:  N/A

_____/s/_____
Margaret Hoehl O'Shea, AAG, VSB #66611
Attorney for named Defendants
Criminal Justice & Public Safety Division
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
(804) 225-2206
(804) 786-4239 (Fax)
