## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release, dated as of January 15, 2021, is entered into by the parties in *Reyes v. Clarke et al.*, Case No. 2:19-cv-0035-JPJ-PMS, currently pending in the United States District Court for the Western District of Virginia.

The plaintiff is Nicolas Reyes ("Plaintiff"). The Plaintiff is represented by Vishal Agraharkar and Eden Heilman of the ACLU of Virginia, Maggie Filler of the Roderick and Solange MacArthur Justice Center, Alan Swirski, Alejandro Guadarrama, Jaclyn Roeing and Lauren Oppenheimer ("Plaintiff's Counsel").

The Defendants are Harold Clarke, A. David Robinson, Jeffrey Kiser, Randall Mathena, Arvil Gallihar, Amee Duncan, Larry Collins, Justin Kiser, Christopher Gilbert, Garry Adams, James Lambert, Terrance Huff, and Donnie Trent (collectively, the "VDOC Defendants" or "VDOC"). The VDOC defendants are represented by Margaret Hoehl O'Shea at the Office of the Attorney General and Maya Eckstein of Hunton Andrews Kurth, LLP.  Earl Barksdale, William Lee, and Steven Herrick are not party to this agreement and will be separately dismissed.

The parties agree as follows:

1.    **Dismissal of Case No. 2:19cv00035:** The Parties shall, by and through their attorneys, cause the Complaint pending in the Western District of Virginia, Case No. 2:19cv00035, to be voluntarily dismissed. The parties consent to the reservation and exercise of jurisdiction by the U.S. District Court over all disputes between and among the Parties arising out of this Agreement for the period set forth in Paragraph 24 of this Agreement.

2.    **Settlement Payment:** In full and fair settlement of this matter, but without admitting liability, the VDOC Defendants, by and through the Commonwealth of Virginia, agree to pay to Plaintiff, within 60 days of the date of this settlement, the sum of one hundred fifteen thousand dollars ($115,000) for alleged damages suffered on account of personal physical injuries and physical sickness. The check shall be made payable to the order of ACLU Foundation of Virginia in trust for Nicolas Reyes, and delivered to the attention of Vishal Agraharkar. This figure includes any costs, expenses, and/or attorneys' fees which Plaintiff may otherwise have been entitled to recover against the Commonwealth.

3.    **Expedited ICA Hearing:** VDOC Defendants agree to hold an expedited ICA hearing no later than six months from the date of settlement to evaluate Plaintiff's security level and appropriate housing placement. As part of the ICA hearing, VDOC agrees to consider materials provided by Plaintiff's Counsel and to provide Plaintiff's Counsel with at least one week's notice of the date of the ICA hearing. The recommendation as to whether the Plaintiff's security level should be decreased will be made in accordance with VDOC policy and based upon all of the circumstances being considered by the reviewer. Although the ICA hearing will occur at six months rather than as an annual review hearing, VDOC agrees that it

will not deny Plaintiff a re-classification to lower security solely on the basis that Plaintiff has been at Level 5 for six months prior to the ICA hearing, as opposed to the usual twelve months.

    a. If Plaintiff is re-classified to Security Level 4 or below as a result of the six-month ICA hearing, VDOC will assess the suitability of transferring Plaintiff to the SAM Unit at Buckingham Correctional Center at that time.

    b. If Plaintiff is reclassified to Security Level 4 or below as a result of the six-month ICA hearing, but not transferred to Buckingham Correctional Center at that time, VDOC will consider whether it would be appropriate to transfer him to a prison located within a three hours' drive from Alexandria, Virginia, and as part of that evaluative process, will consider whether the proposed transfer would result in his placement at a facility with a significant number of Spanish-speaking staff.

    c. VDOC agrees to audio-record the six-month ICA hearing and provide a copy of the recording to Plaintiff's Counsel within 48 hours following the hearing.

4. **Single-Cell Status:** VDOC agrees that Plaintiff shall be housed in a single-cell housing assignment for at least one year from the date of settlement, unless Plaintiff agrees during that one-year period to be reassigned to a double-cell housing assignment. Discussions between VDOC and Plaintiff about such a move to a double-cell housing assignment shall be done with the aid of a certified interpreter to ensure that Plaintiff fully understands the benefits and risks associated with the move. If Plaintiff voluntarily moves to a double-cell prior to the expiration of that one-year period and subsequently determines that he prefers a single-cell housing assignment, VDOC will promptly evaluate his request to return to a single-cell status. After one year of single-cell status and before moving Plaintiff to a double-cell, a multi-disciplinary treatment team including Plaintiff's treating mental health providers shall meet to re-evaluate Plaintiff's single-cell status before requiring that he move to a double-cell.

5. **Interpretation Services:** VDOC agrees that a certified interpreter will provide interpretation services for Plaintiff at all disciplinary hearings, classification hearings, and all scheduled mental health and medical visits. These services may be provided through the telephonic interpretation service provider under contract with VDOC. All staff responsible for conducting Plaintiff's disciplinary and classification hearings and coordinating Plaintiff's medical and mental health care will be notified of this provision and of the process for using telephonic interpretation services.

6. **Mental Health:** VDOC agrees that Plaintiff will receive no fewer than one scheduled mental health visit per month.

a. Such mental health visits will be conducted with the aid of a certified interpreter (so that at least one mental health visit per month will be conducted with the aid of a certified interpreter, as set out in Paragraph 5). These services may be provided through the telephonic interpretation service provider under contract with VDOC. This provision does not preclude additional mental health visits from being scheduled and/or conducted with the aid of a certified interpreter.

b. In the event of a medical or mental health emergency, every effort will be made to provide appropriate interpretation services during the emergency response, such as interpretation through a Spanish-speaking VDOC staff member, or making the telephone interpretation service available through a portable phone.

7. **Language Access Policy:** VDOC agrees to adopt, before the end of the federal court jurisdictional period, a permanent language access policy ensuring that all Limited English Proficient (LEP) persons are provided meaningful access to Departmental facilities, programs, and activities. In drafting the policy VDOC will consult the draft policy prepared by Plaintiff's Counsel and provide Plaintiff's Counsel additional opportunities to provide input on the policy including by commenting on a proposed final draft of VDOC's language access policy and attending at least one meeting regarding a draft of the proposed policy. VDOC will notify Plaintiff's Counsel upon adoption of a final version of the language access policy and provide Plaintiff's Counsel a copy of said policy.

8. **LEP Coordinator and Monitors:** VDOC agrees to designate one system-wide LEP Coordinator and to designate one LEP Monitor for every facility. The LEP Coordinator in conjunction with the LEP Monitors will be tasked with overseeing implementation of the language access policy. VDOC will notify Plaintiff's Counsel once the LEP Coordinator and LEP Monitors have been designated and will provide Plaintiff's Counsel a listing of the LEP Coordinator's and Monitors' names, titles, and contact information.

9. **Ongoing Monitoring and Access to Counsel/ Mental Health Professionals:**

a. Between the date of settlement and the date of the expedited six-month ICA hearing, Plaintiff's Counsel will be provided the ability to meet with Plaintiff twice a month via confidential videoconference. Mental health professionals selected by his counsel may participate in these videoconferences.

b. For the six-month period following the execution of this Agreement, VDOC will provide Plaintiff's Counsel, on the 5th business day of each month, with Plaintiff's medical, mental health, ICA, disciplinary, programming, and grievance/informal complaint records, as well as records sufficient to show compliance with the requirement that Plaintiff receive certified interpretation services consistent with this Agreement. The records shall be

transmitted to Plaintiff's Counsel via email or other electronic communication.

c. If Plaintiff is placed in a restrictive housing unit at any point during his incarceration, VDOC will notify Plaintiff's Counsel and he will be allowed a videoconference with counsel and a mental health professional chosen by Plaintiff's counsel within 48 hours of placement unless security considerations or other unforeseen circumstances prevent that videoconference from occurring during those initial 48 hours, in which case VDOC will work with counsel to conduct that conference at the earliest feasible opportunity. If VDOC is unable to contact Plaintiff's Counsel, VDOC will notify the Executive Director of the ACLU of Virginia or the Executive Director of the MacArthur Justice Center.

10.   **Adjustment of Mandatory Parole Release Date:** VDOC agrees to reclassify Plaintiff as Good Time Earning Level 1 for the period of time corresponding from April 3, 2010 through the present, and to additionally restore the 90 days of lost good time credit as the result of a 2012 disciplinary hearing, and to reflect that recalculation in his VDOC records. VDOC represents that, following these recalculations, Plaintiff's mandatory parole release date will be adjusted to February 1, 2027.

11.   **Non-Retaliation Provision:** VDOC agrees to ensure that Plaintiff does not face retaliation by VDOC employees or agents as a result of this settlement or exercising any of the rights herein.

12.   **Notification to VDOC Employees, Agents, Contractors:** VDOC agrees to include a copy of this Agreement in Plaintiff's institutional file and will take all reasonable efforts to ensure that its employees, agents and contractors are aware of the provisions of this Agreement and of their obligations to comply with its terms.

13.   **Releases:** The undersigned Parties unconditionally release and discharge each other, their agents, representatives, insurance carriers, attorneys, predecessors-in-interest, successors-in-interest, heirs, assigns and personal representatives, in their individual and representative capacities (collectively, the "Released Parties"), from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, causes of action, rights, costs, losses, debts and expenses of any nature whatsoever, now known, which they ever had or now have by reason of any matter, fact or cause asserted in Case No. 2:19cv00035. This Release specifically encompasses only those claims, whether under federal or state law, that have been brought against the Commonwealth of Virginia, the Virginia Department of Corrections, or any employees, officers, or agents thereof in Case No. 2:19cv00035. Nothing in this Paragraph shall preclude the Plaintiff from asserting a future claim concerning his mental health, his religious rights, or any other right or privilege that he may have, under federal law, state law or other applicable law.

14. **No Admission of Liability:** The Plaintiff acknowledges that this Agreement does not constitute an admission by the Defendants of any: (a) liability; (b) violation of any federal, state or local statute, law, regulation, order or other requirement of law; (c) breach of contract, actual or implied; (d) commission of any tort; or (e) other civil wrong.

15. **Virginia Law Applies:** This Agreement shall be deemed to have been made within the Commonwealth of Virginia and shall be interpreted, construed and enforced in accordance with the laws of the Commonwealth of Virginia. This Agreement shall not be construed with a presumption against the Party causing this Agreement to be drafted. This Paragraph is intended only to address the law applicable to the interpretation and enforcement of this Agreement, and not to affect the law that may be applicable to any future claims that the Plaintiff may assert for relief outside of this Agreement.

16. **Severability:** If one or more provisions of this Agreement shall be ruled unenforceable or void, the Parties may enforce the remainder of this Agreement.

17. **Non-Waiver:** Failure of either Party to enforce any provision of this Agreement shall not be construed as a waiver of that or any other provision.

18. **Voluntary Agreement:** The Plaintiff has had an opportunity to consult with an attorney regarding execution of this Agreement. The Plaintiff acknowledges that, in authorizing this Agreement, he relied only on the promises set forth in this Agreement and not on any other promise made by the Commonwealth. This Agreement has been entered into freely, knowingly, and voluntarily and not as a result of coercion, duress, or undue influence.

19. **Entire Agreement:** This Agreement constitutes the entire understanding and agreement between the Parties hereto with respect to its subject matter. This Agreement supersedes all other understandings, agreements, communications or negotiations (whether written or oral) between the Parties hereto with respect to such subject matter.

20. **Written Amendment Required:** This Agreement may not be amended, changed or altered, except by a writing signed by the Parties.

21. **Binding Obligations:** This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors including future Directors of the Virginia Department of Corrections, their assigns, agents, and all others working for or on behalf of the Parties.

22. **Authority to Bind:** Each individual executing this Agreement represents and warrants that such person is authorized to do so, and, that upon executing this Agreement, this Agreement shall be binding and enforceable in accordance with its terms upon the party or parties for whom such individual is acting. The parties further agree that undersigned counsel have the authority to enter into and execute this Agreement on behalf of their clients.

23. **Counterparts:** This Agreement may be executed in counterparts or with electronic signatures, and if so executed each such counterpart shall have the force and effect of an original. A facsimile or copy of an original signature transmitted to the other Party is effective as an original document.

24. **Court Jurisdiction:** The parties agree to request that the Court retain jurisdiction over this matter for a period of five months for the purpose of enforcing the parties' compliance with the terms of this Agreement, and resolving any remaining issues under the stipulated protective order entered in this case (ECF 103). For this jurisdictional period and thereafter, Plaintiff is not required to exhaust administrative remedies under 42 U.S.C. § 1997e(a) in order to seek relief pursuant to this Agreement.


**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the day and year first above written.

Entered:

_____
Nicolas Reyes

Virginia Department of Corrections

By: _____
Name: Harold Clarke
Director, Virginia Department of Corrections

_____
Vishal Agraharkar
*Counsel for Plaintiff*

_____
Maggie Filler
*Counsel for Plaintiff*

_____
Alan Swirski
*Counsel for Plaintiff*

_____
Margaret Hoehl O'Shea
Assistant Attorney General
*Counsel for VDOC Defendants*

_____
Maya M. Eckstein
*Counsel for VDOC Defendants*